Township of Monroe, Appellant, *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

Argued September 6, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., ROGERS and BLATT. Judge MENCER did not
participate.

*Richard C. Snelbaker*, with him *Martson and Snel-
baker*, for appellant.

*Dennis J. Harnish*, Special Assistant Attorney Gen-
eral, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, November
21, 1974:

The Township of Monroe (appellant) appeals from
an adjudication of the Environmental Hearing Board
(EHB) affirming a May 16, 1973, Department of En-
vironmental Resources' (DER) order directed to appel-
lant. Part of this order required appellant to "negotiate
and enter into an agreement" with the Sewer Authority
of the Borough of Mechanicsburg for the use of its excess
sewerage treatment facility capacity.

This controversy has its genesis in an April 16, 1973,
Consent Order of this Court in another proceedings
*(Commonwealth v. Municipal Authority of the Borough
of Mechanicsburg*, No. 290 C. D. 1973), which Consent
Order, among other things, required that Authority to
enter into such agreements with adjacent municipalities
as necessary to facilitate construction of an expansion
and upgrading of the Authority's existing sewerage

treatment facilities. This Consent Order further provided that should the Authority fail to enter into agreements with the requisite adjacent municipalities, DER "shall promptly petition this Court to use any procedure available to it in order to achieve such an agreement." Appellant is a mnuicipality adjacent to the area served by the Authority.

Action taken by appellant pursuant to another environmental statute also bears directly upon the present controversy. Pursuant to Section 5 of the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P. L. 788, *as amended,* 35 P.S. §6005 (Supp. 1974-1975), appellant on March 31, 1971, adopted, with certain reservations, a Tri-County Regional Planning Commission's Sewerage Facilities Plan as applicable to Sewer District No. 1, which includes appellant, the content of which will be discussed hereinafter.

Apparently being of the view that it could not reach appellant, which was not a party to the proceedings leading to the Consent Order against the Authority, *supra,* DER issued its order of May 16, 1973, against appellant, requiring appellant, within thirty days, to enter into an agreement with the Authority. It is from this order that appellant took an appeal to EHB and from its affirmance of the DER order has taken this appeal.

Appellant is a sparsely inhabited rural and agriculturally oriented township, wherein privately installed and maintained septic systems are exclusively utilized in disposal of sewerage wastes. In its adjudication, EHB found as a fact that at present time appellant is not polluting nor causing pollution of the waters of the Commonwealth as prohibited by The Clean Streams Law, Act of June 22, 1937, P. L. 1987, *as amended,* 35 P.S. §691.1 et seq. (Supp. 1974-1975).

This fact affords appellant the basis for its first argument. Inasmuch as it is not presently causing pollution,

appellant asserts that DER lacks power or authority to require it to negotiate an agreement with the Mechanicsburg Sewer Authority, i.e., the DER order in question is void for want of power or authority to compel that which it directs to be done.

The resolution of this argument requires us to consider Section 2, 35 P. S. §691.4, and Section 5, 35 P. S. §691.203, of The Clean Streams Law. Section 2 of the Act, its Declaration of policy provides in pertinent part:

"(3) It is the objective of the Clean Streams Law not only to prevent further pollution of the waters of the Commonwealth, but also to reclaim and restore to a clean, unpolluted condition every stream in Pennsylvania that is presently polluted;"

The crucial language for the purposes of the instant case is, what is meant by "prevent *further* pollution." That is, when the legislature refers to "further pollution," is it restricting the scope of the Act to preventing additional pollution from emanating from already polluting sources, or does the legislature intend by this phrase to prevent prospectively, when possible, pollution deriving from sources that are not currently causing pollution?

"Further" is defined by Webster as "in addition" and thus, the definition does not assist us in resolving this issue as it is equally applicable to either possible interpretation. In statutory construction, however, the salutary purpose behind the Act—clean streams—the broadest interpretation consistent with the express language of the statute, should be applied. Such a construction of The Clean Streams Law is consistent with the evolving decisional law under this Act. *See Commonwealth v. Barnes & Tucker Co.,* 455 Pa. 392, 319 A. 2d 871 (1974) ; *Commonwealth v. Harmar Coal Co.,* 452 Pa. 77, 306 A. 2d 308 (1973).

So construing the language of Section 2, we must conclude that the legislature intended to prevent not only the discharge of pollution into streams of the Common-

wealth from sources that are currently polluting but also from sources that, although not now polluting, will be polluting in the future.

Section 5 of the Act also bears on this issue. It provides in pertinent part:

"(b) . . . the department may issue appropriate orders to municipalities where such orders are found to be necessary to assure that there will be adequate sewer systems and treatment facilities to meet present and future needs . . . ."

The crucial language of this section is the phrase "present and future." That is, is there a prerequisite that present pollution exists in a municipality before the DER may issue orders to eradicate it and thus, also prevent future pollution. Having construed Section 2 of the Act as establishing a policy of preventing future pollution, we can only conclude that Section 5 affords DER the express power and authority to issue orders against municipalities to assure that adequate treatment facilities will be constructed to meet an ascertainable future need of a municipality even though it is not currently polluting. In effect, Section 5 must be construed to permit the DER to employ preventive medicine as well as curative medicine.

An essential element, however, of DER's exercising this broad power to prevent future pollution in those cases wherein a municipality is not currently causing or allowing pollution, is an affirmative demonstration by DER that the municipality will at some ascertainable time in the future need a sewerage treatment facility or access to a facility in a neighboring municipality.

This brings us to appellant's alternative argument to the effect that there is a want of substantial evidence in the record before the EHB to support its finding that appellant has an identifiable future need for sewerage treatment facilities.

In its order of May 16, 1973, DER stated that appellant will have future sewerage needs within the useful life of the Authority's facilities as they are to be upgraded and expanded pursuant to the Consent Order mentioned above. After hearing the appeal, EHB, in addressing itself to this issue, found (a) that appellant will have future need for sewerage treatment in an area of the township encompassed within Sewer District No. 1; (b) that the Tri-County Planning Commission Report, adopted by appellant as relevant to it, recommends that the portion of Monroe Township designated as Sewer District No. 1 be sewered to the Authority plant projected for completion in 1976, which timetable is in accord with the projected sewer needs of appellant for sewerage treatment; and (c) that appellant has not "submitted a subsequent implementation schedule showing a future need other than the 1976 date."

Are these findings supported by substantial evidence? A review of the record discloses that DER and EHB have exclusively relied upon the aforesaid Tri-County Planning Commission Report as the supporting evidence demonstrating a future need.

A review of these plans, however, discloses simply a projected population increase in Sewer District No. 1 over a twenty-year period (1970-1990) from 1460 persons in 1975 to 2820 persons in 1990. The remainder of the report concerns itself with engineering, cost and financing studies incident to lateral and main connections leading to the sewerage facilities of the Authority. Its emphasis and conclusion, based essentially upon cost and financing considerations, is that a regional collection and treatment system should be established. In essence, then, the sole basis for the conclusion that appellant will have a future need for sewerage treatment facilities is the projected population increase. Standing alone, does this projected increase in population justify appellee's con-

clusion that a future need for treatment facilities will exist? Assuming the accuracy and import of these population projections, it is significant that the Commonwealth's own witness, Mr. Donato, testified on cross-examination that in the absense of further evidence analyzing "soils and so on," any estimate as to future needs of appellant is speculative. The fact that population will increase does not necessarily establish a basis of future need for a sewerage treatment facility and its weight in this particular case is minimal. Currently, sewerage in Monroe Township is discharged into individual septic systems and there is no evidence, through soil analysis or otherwise, that such systems will not be adequate in the future as the population expands. In the absence of additional evidence of a nonspeculative nature, the finding by EHB of a future need existing in appellant is not supported by substantial evidence.

Appellee asserts that it may order municipalities to enter into negotiations with other municipalities, under Section 5 of the Act, 35 P. S. §691.203, and that should the municipalities fail to reach an agreement as a result thereof, DER may impose a reasonable agreement upon them. Whether the term "negotiate" necessarily implies negotiate to fruition, need not now be decided, as we have concluded that DER has not sustained its burden of demonstrating a present or future need of the appellant for a sewerage treatment facility.

For the foregoing reasons, we enter the following

## ORDER

Now, November 21, 1974, the order of the Environmental Hearing Board is reversed and the order of the Department of Environmental Resources of May 16, 1973, directed to the Township of Monroe, is hereby set aside.